UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

PERRY OMAR BUCKNER,

        Petitioner,

v.                                       Case No. 5:07-cv-10-Oc-10GRJ

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.
_____

**ORDER**

**I. Status**

Petitioner Buckner, who is proceeding pro se, initiated this action by filing a Petition for Writ of Habeas Corpus (hereinafter Petition) (Doc. #1) pursuant to 28 U.S.C. § 2254 on December 28, 2006, pursuant to the mailbox rule. Petitioner challenges a 1996 state court (Sumter County, Florida) judgment of conviction for first degree murder and shooting into an occupied conveyance on two grounds of newly discovered evidence: (1) the April 2006 discovery of Derek Sesler[1] (Inmate No. 102703), who allegedly witnessed the

---

[1] The correct spelling of Derek's surname is "Sesler" and will be referred to as such throughout this Order. See http://www.dc.state.fl.us/ActiveInmates.

June 2, 1995, incident, and (2) the recantation of the trial testimony of Garlinda Towns, a key State witness.

Respondents have responded. See Respondents' Response to Petition (hereinafter Response) (Doc. #6).[2] Petitioner was given admonitions and a time frame to respond. See Court's Order to Show Cause and Notice to Petitioner (Doc. #2). Petitioner has replied. See Petitioner's Reply to State's Response (Doc. #8). This case is now ripe for review.

## II. Procedural History

After a jury trial, Petitioner was convicted of shooting into an occupied conveyance (count one) and first degree murder (count two). He was sentenced to death for the first degree murder conviction and a consecutive five-year term of imprisonment for shooting into an occupied conveyance. On appeal,[3] the Supreme Court of Florida affirmed his convictions on both counts and the sentence on count one, but reversed his sentence of death for the first degree murder and remanded the cause for imposition of a life

---

[2] The Court will refer to Respondents' exhibits as "Resp. Ex."

[3] On appeal, Petitioner raised seven issues, claiming that (1) the evidence is insufficient to support a conviction of first degree murder; (2) Buckner was involuntarily absent from portions of the proceeding and inappropriately shackled; (3) the death sentence is inappropriate in this case; (4) the judge failed to engage in an independent weighing process; (5) extrajudicial evidence created undue sympathy, which warranted a mistrial; (6) the trial judge improperly excused three prospective jurors; and (7) a death sentence based on a recommendation by a bare majority of the jury is unconstitutional.

sentence without the possibility of parole. Petitioner was resentenced on August 12, 1998, to a term of life imprisonment for the first degree murder.

The Supreme Court of Florida set forth the following facts of the case:

> The following evidence was presented at trial. Buckner, who was eighteen years of age at the time of these crimes, and a number of other individuals went to a bar together. Buckner's off-and-on girlfriend, Latarcia Hampton (Tasha), arrived separately. Tasha was seen dancing that night with Thaddeus Richardson (the victim), and Tasha and Buckner were seen arguing.FN1
>
>> FN1. In her testimony, Tasha denied dancing with the victim or engaging in any argument with Buckner.
>
> At the time the bar closed, the victim was sitting outside in his vehicle. Witnesses who spoke to the victim just before he was murdered stated that he was in a good mood. Buckner was seen exiting the bar and walking quickly over to the victim's vehicle. The two exchanged a few words and were seen "tussling" while the victim was still in the car. At this point, Buckner shot the victim twice and then walked away. The victim exited the vehicle and yelled "Oh my God, somebody help me." Buckner walked back to the victim and shot him three more times. One witness, Garlinda Lewis, stated that Buckner told the victim just before firing the last three shots: "Mother fucker, you ain't had enough?" FN2
>
>> FN2. Although the testimony of the eyewitnesses (Reginald Davi[s] and Garlinda Lewis) who presented most of these facts was fairly consistent, Davi[s]'s testimony differed from his initial statements

3

> to law enforcement officers, and he had pending misdemeanor charges at the time of trial. Lewis admitted she was dealing in drugs in the parking lot at the time of the murder, she had twenty-nine previous felony convictions, and her husband had two pending felony charges at the time of trial. Additionally, although Lewis was the only person who heard Buckner say, "You ain't had enough?", a number of witnesses saw Buckner shoot the victim.
>
> Medical testimony reflected that the victim had been shot five times: two wounds to the upper neck area; one to the right chest; one to the abdomen, and one in the back of the neck from a shot fired from only a few inches away. Death was caused by internal hemorrhaging, and the victim could have remained conscious for several minutes before he died. The murder weapon was never recovered.
>
> Buckner testified in his defense that, as he was walking away from the bar, the victim's car began to back up; that he bumped on the car to let the victim know he was behind it; and that the victim shouted an obscenity at him when he tried to explain why he hit the car. He further contended that the victim then reached down for a gun and that, as Buckner rushed the car, the gun went off. The victim got out of the car still holding the gun and in the struggle that then occurred, it went off twice more. Buckner managed to get the gun and when the victim continued to attack him, Buckner fired three times, dropped the gun, and ran. He stated that the other witnesses were lying about what occurred.

Buckner v. State, 714 So.2d 384, 386-87 (Fla. 1998) (per curiam).

On or about June 2, 2000, Petitioner filed a pro se motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, in which

4

he raised the following claims: (1) defense counsel (Hugh Lee) caused an eight-month delay in discovery so that the crime scene was not "fresh" for independent defense evaluation and witness Derek Freeman was lost; (2) defense counsel (Hugh Lee) failed to consult with Petitioner regarding strategic decisions in his case, including waiving speedy trial and Petitioner's not being present at several pretrial hearings; (3) defense counsel (Julian Harrison) failed to preserve the eight-month delay in discovery issue as error for appellate review; and (4) Petitioner's due process rights were violated due to prosecutorial misconduct where the prosecutor made the statement during closing argument: "we did our best to find out the truth of what happened that night." Resp. Ex. C. On July 27, 2000, the court denied the motion for post conviction relief. Id. On January 23, 2001, the appellate court per curiam affirmed without issuing a written opinion. Buckner v. State, 778 So.2d 295 (Fla. 5th DCA 2001); Resp. Ex. D. The mandate was issued on February 12, 2001.

On April 6, 2001, Petitioner filed a Notice to Invoke Discretionary Jurisdiction in the Supreme Court of Florida. Resp. Ex. E. On April 9, 2001, the Supreme Court of Florida dismissed the petition for review because the court did not have jurisdiction. Id.

On or about June 28, 2006, Petitioner filed a second pro se motion for post conviction relief pursuant to Fla. R. Crim. P.

3.850. Resp. Ex. F. Petitioner claimed that he had discovered new evidence consisting of (1) a previously unknown witness (Derek Sesler)[4] who will provide evidence that proves that he was present at the night club on June 2, 1995 (the day of the shooting) and that he observed the entire encounter between Petitioner and the victim, and (2) a State key witness (Garlinda Towns) who will recant her trial testimony, stating her trial testimony was not accurate and was given due to promises that were inferred by the State. Resp. Ex. F. On July 12, 2006 (amended order, filed July 25, 2006), the trial court denied the Rule 3.850 motion. Id. On October 17, 2006, the appellate court per curiam affirmed without issuing a written opinion. Buckner v. State, 940 So.2d 440 (Fla. 5th DCA 2006). The mandate was issued on November 3, 2006. Resp. Ex. F.

### III. One-Year Limitations Period

The Petition, filed in this Court on December 28, 2006, pursuant to the mailbox rule, is timely filed within the one-year period of limitations. See 28 U.S.C. § 2244(d); Response at 10-12.

---

[4] According to Sesler's affidavit, Sesler met Petitioner Barnes at Columbia Correctional Institution on April 27, 2006, and told Petitioner that he "watched the entire incident" and "saw everything" that happened on June 2, 1995, the day of the shooting.

6

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted by this Court.

## V. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state

7

> court only if the state court adjudication[5] resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[6] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Marquard, 429 F.3d at 1303. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006).

Id. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." Schriro, 550 U.S. at 473-74. This presumption of correctness applies equally to factual determinations made by state

---

[5] For a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003).

[6] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 550 U.S. at 473 (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## VI. Findings of Fact and Conclusions of Law

Petitioner claims that the discovery of this new evidence would result in an acquittal, if granted a new trial. He concludes that the new evidence "clearly offers proof of plaintiff's actions in self defense" and "[u]pon any retrial it would be probable that plaintiff would be found not guilty of premeditated First Degree Murder." Petition at 17. Specifically, Petitioner states:

> The first aspect of plaintiff[']s newly discovered evidence is Garlinda Towns['] recantation of her trial testimony. Towns has asserted that her testimony was inaccurate and only given due to the government[']s promises of leniency. Towns now states that she was at the Royal Palm night club on the evening of the incident but as she was involved in a drug deal with Ronald Davis, and ducking behind a car, she did not observe the shooting between plaintiff and victim.
>
> The second aspect of plaintiff[']s newly discovered evidence is a[n] eyewitness account of the entire incident between plaintiff and victim. Sessler has asserted that he was present at the Royal Palm night club at the time plaintiff and victim struggled. Sessler states that he observed plaintiff walking behind victim's vehicle when it began to exit its parking space. Sessler observed plaintiff slap the truck of victim[']s car to alert him that he was behind him. Plaintiff walked around to [the] driver[']s window where words were exchanged. Sessler observed [the] victim raise his arm and attempt to extend a hand gun out his car window. Plaintiff grabbed [the] victim[']s arm and struggled with [the] victim

9

> through the car[']s window. Plaintiff stepped
> back from [the] window after [the] gun
> discharged. Victim quickly exited his vehicle
> and attempted to point [the] hand gun at
> plaintiff. Plaintiff grabbed [the] victim[']s
> arm and [the] gun discharged again. Victim
> stumbled away and plaintiff ran away.

Petition at 16.

As acknowledged by the parties, Petitioner raised these newly discovered evidence issues in his second Rule 3.850 motion. In denying the motion, the trial court stated in pertinent part:

> In the present Motion for Post Conviction Relief filed on July 3, 2006, the Defendant asserts there is new evidence. He provides an affidavit of a previously unknown witness and an [sic] also contends that a State's witness will recant her previous testimony.
>
> "To obtain relief based on newly discovered evidence, a petitioner must satisfy two prongs. First, the evidence offered must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that neither defendant nor his counsel could have known of it by the use of diligence. Second, the newly discovered evidence must be of such a nature that it would probably produce an acquittal on retrial." Archer v. State, 2006 WL 1766760, *2 (Fla. June, 29, 2006) (citing Jones v. State, 709 So.2d 512, 521 (Fla. 1998)).
>
> Regarding Post Conviction Relief, this Court ["]must accept the factual allegations made by the defendant to the extent that they are not refuted by the record." Freeman v. State, 761 So.2d 1055, 1061 (Fla. 2000). In this case, the affidavit provided by the previously unknown witness, Derek Sessler, states that he did not come forward as a witness because there was a warrant out for his arrest for murder at the time of the incident. Mr. Sessler is now an inmate at the

Columbia Correctional Institute with the Defendant. Nevertheless, this Court will accept Mr. Sessler's factual allegation that the evidence which he offers was previously unknown by the trial court and that the State or the Defendant's counsel could not have known of it by the use of diligence. Further, this Court will acknowledge that the State or the Defendant's counsel could not have known Garlinda Towns would recant her testimony at the time of trial. Accordingly, this Court will analyze the Defendant's claim under the second prong for new[ly] discovered evidence: the evidence must be of such a nature that it would probably produce an acquittal on retrial.

According to the Defendant[']s Motion, State's witness Garlinda Towns will recant her testimony as inaccurate and only given after the State expressed promises through inferences of help regarding her own legal troubles. Mrs. Towns, then known as Garlinda Lewis, will now testify that she was ducking down behind a car after she heard shots fired and was not in a position to observe the incident.

It is well-settled that "not all recantations will be considered newly discovered evidence," Archer, 2006 WL 1766760, at *2. To illustrate, the Supreme Court summarized Mrs. Towns' relevant testimony in a footnote as follows:

> Although the testimony of the eyewitnesses (Reginald Davi[s] and Garlinda Lewis) who presented most of these facts was fairly consistent, Davi[s]'s testimony differed from his initial statements to law enforcement officers, and he had pending misdemeanor charges at the time of trial. Lewis admitted she was dealing in drugs in the parking lot at the time of the murder, she had twenty-nine previous felony convictions, and her husband

> had two pending felony charges at the time of trial. Additionally, although Lewis was the only person who heard Buckner say, "You ain't had enough?", a number of witnesses saw Buckner shoot the victim.
>
> Buckner v. State, 714 So.2d 384, 387 n.2 (Fla. 1998). Thus, it is apparent that Mrs. Towns' most significant contribution to the evidence was what she heard, not what she saw. Further, there were a number of other witnesses who observed the Defendant sho[o]t the victim. Therefore, it is clear that Mrs. Towns' change in testimony does not satisfy the second prong of [the] test; that is, her testimony is not of such a nature that it would probably produce an acquittal on retrial.
>
> Mr. Sessler's affidavit states that he saw the initial struggle between the victim and the Defendant and heard several shots fired. He states that he saw that the victim was injured and he saw the Defendant walk away. The only inconsistency with Mr. Sessler's testimony and the testimony accepted at trial is that Mr. Sessler claims that he never saw the Defendant walk back to the victim and shoot him three more times. Nevertheless, Mr. Sessler's testimony is clearly consistent with the general version of incident. Therefore, it is clear that the testimony provided in Mr. Sessler's affidavit does not satisfy the second prong of [the] test; that is, his testimony is not of such a nature that it would probably produce an acquittal on retrial.

Resp. Ex. F, Amended Order on Defendant's Motion for Post Conviction Relief at 2-4. On appeal, the appellate court per curiam affirmed without issuing a written opinion. Buckner, 940 So.2d 440.

Citing <u>Herrera v. Collins</u>, 506 U.S. 390 (1993), Respondents contend that Petitioner "has only made allegations of new evidence that goes toward his guilt" and has not implicated any federal constitutional rights, and thus his claims are not cognizable under federal habeas corpus review. Response at 12-13. In <u>Herrera</u>, the Court stated: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." <u>Herrera</u>, 506 U.S. at 400. The Court relied on several important principles. First, "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact." <u>Id</u>. at 400 (citations omitted). Further, "in state criminal proceedings the trial is the paramount event for determining the guilt or innocence of the defendant." <u>Id</u>. at 416; <u>accord</u> <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983) ("Federal courts are not forums in which to relitigate state trials."). Additionally, federal freestanding actual innocence claims implicate the State's "powerful and legitimate interest in punishing the guilty, and the nature of state-federal relations." <u>Herrera</u>, 506 U.S. at 421 (O'Connor, J., concurring). For these reasons, the Court warned that "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." <u>Id</u>. at 401.

The Eleventh Circuit has stated:

> [T]he Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial. "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." Id.

Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002). This claim of actual innocence does not present a claim that is cognizable on federal habeas review. See Sibley v. Culliver, 377 F.3d 1196, 1207 n.9 (11th Cir. 2004) (noting that a claim of actual innocence is not a "claim" for purposes of section 2254); see also Swindle v. Davis, 846 F.2d 706 (11th Cir. 1988) (per curiam).

Even assuming that he has raised a federal constitutional claim that is cognizable on federal habeas review, this claim of newly discovered evidence was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. Accordingly, the claim should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state

courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Ocala, Florida, this <u>13th</u> day of July, 2009.

UNITED STATES DISTRICT JUDGE

sc 7/6
c:
Perry Omar Buckner
Ass't Attorney General (Morris)